UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ATCHAFALAYA BASINKEEPER, INC., ET AL.

CIVIL ACTION

VERSUS

SCOTT A. SPELLMON, ET AL.

NO. 24-00381-BAJ-EWD

## RULING AND ORDER

Before the Court is **Plaintiffs' Motion To Introduce Extra-Record Evidence (Doc. 30, the "Motion")**. Defendants oppose the Motion. (Doc. 38). Plaintiffs filed a Reply. (Doc. 54).

For the following reasons, Plaintiffs' Motion will be **GRANTED**.

## I.    BACKGROUND

This case concerns Plaintiffs' challenge to the United States Army Corps of Engineers' (the "Corps") approval of the East Grand Lake Hydrological Restoration Project (the "EGL Project"). (Doc. 30-2 at 1). Plaintiffs allege violations of the National Environmental Policy Act ("NEPA"), the Clean Water Act, the Flood Control Act, and the Rivers and Harbors Act. (Doc. 1 ¶¶ 198–233). Plaintiffs assert that the Corps failed to adequately assess the impacts of and alternatives to the EGL Project, and in so doing failed to consider the "disastrous results" of similarly designed past projects. (Doc. 30-2 at 1). In support of this contention, Plaintiffs ask the Court to admit as extra-record evidence a report which the Corps did not include in the administrative record and which it did not consider in approving the EGL Project. (*Id.*).

The Corps' primary responsibility in the Atchafalaya Basin (the "Basin") is to oversee flood control projects. (*Id.* at 2). To that end, in 1982, the Corps produced an Environmental Impact Statement ("EIS") which divided the Basin into 13 Water Management Units ("WMU") to improve water movement and restrict sediment deposition. (*Id.* at 1–2). Among these WMUs are Buffalo Cove and Flat Lake. (*Id.* at 2). The EGL Project is located within the Flat Lake WMU. (*Id.*).

In 2004, the Corp began constructing the first pilot WMU System approved in the EIS, which it named the "Buffalo Cove Management Unit Project" (the "Buffalo Cove Project"). (*Id.* at 3). The goal of the Buffalo Cove Project was to "Improve interior swamp circulation, remove barriers to north/south flow, and improve river water input while limiting sediment deposition." (*Id.*). Like the Buffalo Cove Project, the EGL Project includes constructed elements for river water and gaps placed in existing dredged material embankments. (Doc. 30-2 at 4). The EGL Project is designed with the aim to improve water flow and water quality. (Doc. 38 at 3).

From 2004 to 2021, Louisiana State University ("LSU") monitored water quality in Buffalo Grove and produced annual reports documenting the results. (*Id.* at 3; Doc. 38 at 7; Doc. 54 at 4). In 2023, this culminated in one Final Report by LSU on the Buffalo Cove Project (the "Report") which summarized the water quality results of the project over the span of its existence. (Doc. 30-2 at 3). LSU issued the Report "to determine whether the project achieved its goals," presumably to inform future projects for which it was a pilot. (Doc. 54 at 2 n.1). Though LSU was tasked

with monitoring water quality, the Report documented that LSU was forced to abandon 29 out of 62 water sampling sites due to severe sedimentation and accretion. (Doc. 30-2 at 3).

The Corps included a handful of LSU's annual reports in the administrative record, some of which included mention of sedimentation with varying degrees of specificity. (Doc. 38 at 7–8; Doc. 54 at 4–6). The Report, however, which the Corps did not include in the administrative record, includes a detailed account of sedimentation over the full two-decade period of water quality monitoring. (*Id.* at 6). The Report concludes that without "sediment traps ... water inputs will necessarily result in sediment accretion." (*Id.*).

LSU released the Report several months before the final permit decision for the EGL Project. (Doc. 30-2 at 5). The Corps had the Report in its possession about three months before issuing the permit for the EGL Project. (*Id.* at 3, 5). However, the Corps ultimately decided not to consider the Report, and therefore did not include it in the administrative record. (*Id.* at 6). Because the Corps did not consider the Report, Plaintiff did not seek to add the Report to the administrative record. (*Id.* at 2 n.1).

## II.    LEGAL STANDARD

When reviewing an agency action under the Administrative Procedure Act ("APA"), courts review "the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010). That review must be based on the "full administrative record"

3

that was before the administrative agency at the time that it made its decision. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated in part on other grounds by Califano v. Sanders*, 420 U.S. 99 (1977). Under the "record rule," a Court reviewing agency action under the APA generally "[can]not review evidence outside of the administrative record." *See Indep. Turtle Farmers of La., Inc. v. United States*, 703 F. Supp. 2d 604, 610 (W.D. La. 2010) (citing *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988)). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

However, an agency cannot "unilaterally determine what constitutes the administrative record," and its "designation of the administrative record, like any established administrative procedure, is entitled only to a *presumption* of administrative regularity." *See City of Dall., Tex. v. Hall*, No. CIV.A. 307CV0060-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007) (citing *Overton Park, Inc. v. Volpe*, 401 U.S. at 420; *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 44 (1985)). "Supplementation of the administrative record [is permitted where] the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina*, 602 F.3d at 706 (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

Three circumstances warrant supplementation of the administrative record:
(1) the agency deliberately or negligently excluded documents that may have been
adverse to its decision; (2) the district court needed to supplement the record with
"background information" in order to determine whether the agency considered all of
the relevant factors, or (3) the agency failed to explain administrative action so as to
frustrate judicial review. *Id.*

> In general, courts have viewed "supplementation" of the administrative
> record to be synonymous with "correction" or "completion" of the
> administrative record with materials that should have been included in
> the administrative record, as opposed to the introduction of "extra-
> record evidence" (that was properly excluded by the agency) into the
> administrative record. The distinction between "supplementation" and
> "extra-record evidence" is a significant one that is sometimes overlooked
> in the case law. The "supplementation" of the administrative record
> typically refers to completion of the record by adding something that
> should have properly been included in the administrative record but was
> not due to a clerical error or for any other reason. In contrast, the
> introduction of "extra-record evidence" into the administrative record
> indicates the inclusion of additional evidence outside of or in addition to
> the administrative record that was not necessarily considered before the
> agency.

*Atchafalaya Basinkeeper, Inc. v. Spellmon*, No. CV 23-1697-BAJ-RLB,
2024 WL5245006, at *3 (M.D. La. Dec. 30, 2024) (citations and quotations omitted).

> [A]t least the second and third exceptions to the record rule
> that *Medina* announced cover extra-record material, not intentionally
> or negligently omitted materials. Therefore, regardless of the labels
> used, *Medina* dealt with what is traditionally considered a request to
> add "extra-record" evidence, not an attempt to supplement with
> evidence that the agency considered but failed to include in the judicial
> record.

*Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Eng'rs*, No. 3:13-CV-126,
2015 WL 1883522, at *3 (S.D. Tex. Apr. 20, 2015).

"The purpose of the second *Medina* exception is to enlighten and assist the Court, not to simply add whatever may possibly be relevant to the record." *Atchafalaya*, 2024 WL 5245006, at *6 (citations and quotations omitted). Evidence that is cumulative of materials already in the record does not satisfy the second exception to the record review rule. *See Indigenous Peoples of Coastal Bend v. U.S. Army Corps of Eng'rs*, No. 2:21-CV-00161, 2023 WL 6226387, at *15 (S.D. Tex. July 27, 2023), *aff'd on other grounds*, 132 F.4th 872 (5th Cir. 2025); *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986) (holding that where extra-record evidence "might have supplied a fuller record, but otherwise does not address issues not already there[, n]o further 'background information' [is] necessary for the court to review the record.").

However, "an adequate record can sometimes only be determined by looking outside the administrative record to see what the agency may have ignored." *Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force*, 249 F. Supp. 2d 763 (N.D. Tex. 2003), *vacated on other grounds sub nom. Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Fed. Aviation Admin.*, 116 F. App'x 3 (5th Cir. 2004). "To satisfy [the second exception], the documents in question must do more than raise nuanced points about a particular issue; the documents must point out an entirely new general subject matter that the agency failed to consider." *Atchafalaya*, 2024 WL 5245006, at *6 (citations and quotations omitted).

Nonetheless, in cases involving NEPA claims, Courts typically demonstrate a greater receptiveness to extra-record evidence "because NEPA calls for a comparative

inquiry, *see, e.g.*, 42 U.S.C. § 4332, deciding whether an agency has sufficiently considered environmental impacts requires some sense of the universe of information that was available for the agency to consider." *Gulf Coast*, 2015 WL 1883522, at *2 (citing *Sierra Club v. Peterson*, 185 F.3d 349 (5th Cir. 1999), *vacated and remanded on other grounds on reh'g*, 228 F.3d 559 (5th Cir. 2000)).

## III. DISCUSSION

Plaintiffs argue that the Court should admit the Report under the second *Medina* exception because it provides necessary background information to determine whether the agency considered all relevant factors. (Doc. 30-2 at 9–12). Plaintiffs assert that the Corps failed to address the potential sedimentation impacts of the EGL Project when it did not consider the Report. (*Id.*).

Defendants assert that the Report is cumulative of materials already in the administrative record because Defendants included several annual reports produced by LSU which mention sedimentation. (Doc. 38 at 7–9). Defendants additionally contend that the second *Medina* exception does not apply because the Report does not identify issues that the Corps failed to consider. (*Id.* at 11). Defendants argue that in granting the permit, the Corps broadly addressed commenters' concerns about how the EGL Project is different from the Buffalo Cove Project and explained why different outcomes are expected for the EGL Project. (*Id.*).

The Court acknowledges that the parties present a close question. First, the Court finds that the Report is not cumulative in relation to the materials already in the administrative record. While the LSU annual reports do document

7

sedimentation, they do not detail the full scope of sedimentation over the two decades of the Buffalo Cove Project, which is distinctly similar to the project in question in this case. Because of this, the Court cannot conclude that the Report is cumulative.

Second, the Court finds the second *Medina* exception applies to the Report. While the Court cannot simply admit the Report as extra-record evidence because it may be "generally relevant" and provide a "fuller record" for the Court to consider, here "an adequate record can … only be determined by looking outside the administrative record to see what the agency may have ignored." The Court acknowledges that the Corps did consider sedimentation in its issuance of the permit. However, the Court concludes the comparative inquiry called for in NEPA claims will require the Court to determine whether the agency should have considered the Report.[1] Therefore, the Court will admit the Report as extra-record evidence.

---

[1] To the extent that the language in *Atchafalaya Basinkeeper, Inc. v. Spellmon*, No. CV 23 - 1697 - BAJ-RLB, 2024 WL 5245006, at *6 (M.D. La. Dec. 30, 2024) suggests that the Court may only admit extra-record evidence involving an "entirely new general subject matter," even in a case involving NEPA claims, the Court finds that this authority is persuasive but does not bind the Court.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion (Doc. 30)** be and is hereby **GRANTED**.

Baton Rouge, Louisiana, this 15th day of September, 2025

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

9